******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## KYLE FREITAG *v.* COMMISSIONER
## OF CORRECTION
## (AC 47920)

Moll, Clark and Wilson, Js.

*Syllabus*

The respondent, the Commissioner of Correction, appealed, on the granting of certification, from the habeas court's judgment granting in part the petitioner's petition for a writ of habeas corpus. The respondent claimed, inter alia, that the court improperly concluded that the ineffective assistance the petitioner's trial counsel, O, rendered by incorrectly advising the petitioner that his codefendant was not willing to testify if the case proceeded to trial prejudiced the petitioner. *Held*:

The habeas court properly concluded that the petitioner was prejudiced by O's incorrect advice because it found that, but for the deficient advice, the petitioner would have rejected a plea offer and proceeded to trial.

Argued April 21—officially released July 28, 2026

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment granting in part and denying in part the petition, from which the respondent, on the granting of certification, appealed to this court. *Affirmed.*

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, *Angela Macchiarulo*, supervisory assistant state's attorney, and *Jo Anne Sulik* and *Michael Proto*, senior assistant state's attorneys, for the appellant (respondent).

*Hope J. Estrella*, deputy assistant public defender, for the appellee (petitioner).

PER CURIAM. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting in part and denying in part the amended petition for writ of habeas corpus filed by the petitioner, Kyle Freitag. The habeas court concluded that the petitioner's trial counsel, Francis O'Reilly, rendered

ineffective assistance in connection with his advice to the petitioner to accept a plea deal offered by the state. On appeal, the respondent claims that the habeas court improperly concluded that O'Reilly rendered ineffective assistance of counsel by (1) incorrectly advising the petitioner that his codefendant, Terrence Baxter, was not willing to testify if the case proceeded to trial and (2) misadvising the petitioner concerning the viability of a self-defense claim. We affirm the judgment of the habeas court.

Our decision in the petitioner's prior habeas appeal in this matter set forth the following facts and procedural history. "[In 2012, the petitioner] was charged with, [inter alia] murder, attempted murder, [and] two counts of assault [in the] first degree . . . . The allegations [underlying those charges] were that the petitioner and [his] codefendant . . . Baxter, were driving in the petitioner's minivan on Fort Point Road in Norwalk on October 30, 2012. . . . Baxter was driving, and the petitioner was in the front passenger seat. At some point, the van came upon a scooter being driven in the same direction along the right-hand side of Fort Point Road by a Dajon Johnson, with a Bancroft Daley riding behind him as a passenger. The petitioner did not know the driver but was familiar with . . . Daley from prior interactions on the street. The two vehicles rode in the same direction relatively near each other for some period of time, when, according to one independent witness, the van suddenly accelerated to pull up alongside of the scooter. The petitioner's claim as to this portion of the incident is that the scooter was behind his vehicle and sped up alongside. In any event, when the van and the scooter were beside each other, the petitioner claims to have seen [Daley] reaching toward his waist area. The petitioner pulled out a .32 caliber pistol, reached out of the passenger window, and shot both parties. . . . Baxter immediately sped off, but the two were captured when the van was stopped about ten minutes later on the highway. According to [the] police, the petitioner made several rather unrepentant statements while in custody about shooting the victims

because it was me or them. . . . Johnson died as a result of his gunshot wounds, and . . . Daley was left paralyzed from the mid-back down. The only weapon found in the possession of either victim was a three inch folding knife that was apparently found inside . . . Daley's pocket.

"Attorney Howard Ehring, a public defender, initially appeared as the petitioner's criminal defense counsel. In November, 2014, O'Reilly, appointed as assigned counsel, filed an appearance in lieu of Ehring.

"[The petitioner's criminal matter was] on the firm jury list, and . . . was scheduled to begin trial, when [it was] called on the docket [on] January 14, 2015. Following some discussions, an offer involving guilty pleas to the murder and assault [in the] first degree charges in exchange for a judicially indicated sentence of a minimum of [twenty-five] years to a maximum of [thirty years], followed by [ten] years of special parole, with a right to argue, was conveyed to the petitioner. That offer was initially rejected by the petitioner, through [O'Reilly], on the record. While the [trial] court was explaining the withdrawal of the offer and its impact on future negotiations, the petitioner changed his mind and agreed to enter pleas of guilty to one count of murder in violation of General Statutes § 53a-54a (a), and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). Following the canvass, [the court accepted the pleas, and] the matter was continued to March 11, 2015, for sentencing. On February [17, 2015], however, Attorney [Norman A.] Pattis filed an appearance in lieu of . . . O'Reilly. On April 7, 2015, the petitioner appeared for sentencing represented by . . . Pattis, where, after hearing from all parties, the court imposed a sentence of [thirty] years to serve, followed by [ten] years of special parole on the murder charge, and [twenty] years concurrent on the assault charge, for a total effective sentence of [thirty] years, followed by [ten] years of special parole. . . .

"On September 15, 2015, the petitioner, representing himself, filed a petition for a writ of habeas corpus.

On April 9, 2018, after assigned habeas counsel had appeared on his behalf, the petitioner filed his operative, two count amended petition . . . . In count one of the amended petition, the petitioner asserted a claim of ineffective assistance of counsel against O'Reilly, alleging, inter alia, that O'Reilly had (1) incorrectly advised the petitioner that his codefendant, Baxter, had refused, or would refuse, to testify at his criminal trial, and (2) failed to properly advise the petitioner regarding potential defenses available to him. The petitioner further alleged that, but for O'Reilly's deficient performance, he would not have pleaded guilty but, rather, would have asserted his right to a trial. In count two of the amended petition, the petitioner asserted a claim of ineffective assistance of counsel against Pattis, alleging, inter alia, that Pattis had failed (1) to present adequate mitigation evidence at sentencing, and (2) to file a motion to withdraw his guilty pleas predicated on the ineffective assistance of counsel rendered by O'Reilly. The petitioner further alleged that, but for Pattis' deficient performance, it was reasonably probable that he would have received a lesser sentence. On April 30, 2018, the respondent . . . filed a return, leaving the petitioner to his proof as to his material allegations.

"The matter was tried to the habeas court, *Newson, J.*, over the course of three days in July, August and November, 2018. On February 26, 2019, the court issued a corrected memorandum of decision[1] denying both counts of the amended petition. Thereafter, the petitioner filed a petition for certification to appeal from the judgment, which the court granted." (Footnote in original; footnotes omitted; internal quotation marks omitted.) *Freitag* v. *Commissioner of Correction*, 208 Conn. App. 635, 638–41, 265 A.3d 928 (2021).

On appeal, this court reversed in part the judgment of the habeas court. This court concluded that Judge

---

[1] "The court issued an original memorandum of decision on February 22, 2019. On February 26, 2019, the court issued the corrected memorandum of decision, which corrected certain typographical errors." *Freitag* v. *Commissioner of Correction*, 208 Conn. App. 635, 641 n.5, 265 A.3d 928 (2021).

Newson's conclusion that the petitioner had failed to establish that O'Reilly rendered ineffective assistance of counsel was predicated on a clearly erroneous factual finding, namely, that O'Reilly had advised the petitioner during a meeting prior to the plea hearing "that it was not likely that Baxter would testify." (Emphasis omitted.) Id., 653. In reaching that conclusion, this court explained that the only witnesses who testified concerning the meeting in question were the petitioner and his father [Donald Freitag], both of whom testified "that O'Reilly . . . told them that Baxter *would not* testify," and O'Reilly, who "testified that he did not recall there being any discussion during that meeting about Baxter's willingness to testify." (Emphasis in original.) Id. This court concluded that a new trial was necessary on the petitioner's claims that O'Reilly rendered ineffective assistance of counsel because the substance of his advice about Baxter's willingness to testify was a disputed factual issue that was relevant to those claims. Id., 654, 656. This court also concluded that a new trial was required on the petitioner's claim that Pattis rendered ineffective assistance of counsel by failing to file a motion to withdraw the guilty plea because that claim was predicated on the premise "that his guilty pleas were not made knowingly, intelligently, or voluntarily in light of O'Reilly's ineffective assistance of counsel . . . ." Id., 657. Accordingly, this court remanded the case for a new trial on those claims.[2] Id., 662–63.

On remand, the case was retried before the habeas court, *Bhatt, J.*, on August 15 and December 6, 2023. The petitioner testified on his own behalf and presented testimony from Ehring, O'Reilly, Pattis, and his father. In addition, the petitioner submitted numerous exhibits, including, without objection, the complete transcript of the first habeas trial before Judge Newson. That transcript included the testimony of Baxter and Francis

---

[2]This court affirmed the judgment with respect to the habeas court's denial of the petitioner's claim that Pattis rendered ineffective assistance by failing to present adequate mitigation evidence at sentencing. *Freitag* v. *Commissioner of Correction*, supra, 208 Conn. App. 662.

DiScala, Baxter's counsel from his own criminal case stemming from the shooting at issue.

The petitioner presented evidence that, from the time he was detained by the police approximately ten minutes after the shooting until the time of the plea hearing, he had maintained that he acted in self-defense and intended to pursue that defense at trial. The basis for the petitioner's self-defense claim was his belief that the victims were targeting him in retaliation for his testimony on behalf of AJ Brown, the petitioner's longtime friend who was acquitted of an unrelated murder in 2009 after he claimed that he acted in self-defense. Following Brown's acquittal, the police notified the petitioner that his name was on a "hit list" created by the family of the person that Brown had killed. In addition, several associates of the petitioner were killed, including Brown and another longtime friend of the petitioner who had testified at Brown's trial. The petitioner testified that, immediately before the shooting, he saw Daley reach for a chrome object that the petitioner thought was a gun.[3] The petitioner believed that Baxter's testimony was critical to his self-defense claim and, until the day of the plea hearing, had understood that Baxter was willing to testify on his behalf. He testified that he pleaded guilty only because O'Reilly told him just three minutes before the start of the plea hearing that Baxter was no longer willing to testify. Shortly after he pleaded guilty, however, the petitioner learned that Baxter was, in fact, still willing to testify. The petitioner retained Pattis for the purpose of withdrawing his guilty plea but ultimately did not move to withdraw the plea.[4]

On May 8, 2024, the court issued a memorandum of decision granting in part the petition. The court

[3] The evidence admitted during the habeas trial indicates that no gun was recovered from the scene, but that a folding knife was found in the pocket of one of the victims.

[4] The petitioner testified that Pattis advised him that it would be better to pursue the withdrawal of the guilty plea by way of a habeas petition rather than a motion to withdraw. Pattis testified that he did not believe he advised the petitioner in that regard but, rather, that he had

concluded that O'Reilly rendered ineffective assistance of counsel by incorrectly advising the petitioner that Baxter was unwilling to testify and by improperly advising the petitioner regarding the viability of his self-defense claim, and, therefore, that the petitioner established both of his claims as to O'Reilly. The court first found that Baxter was willing to testify at the petitioner's criminal trial. The court found DiScala, who testified that Baxter was willing to testify on the petitioner's behalf and that he and Baxter met with O'Reilly to discuss Baxter's testimony, to be "extremely persuasive." The court noted that DiScala's credibility "cannot be . . . impugned" because he "ha[d] no motivation to misrepresent Baxter's position or the subject of the conversation between Baxter, himself and . . . O'Reilly . . . ." The court found that O'Reilly nevertheless told the petitioner shortly before the plea hearing that Baxter was not willing to testify. The court concluded that O'Reilly's advice in this regard "was incorrect and constitutes deficient performance." (Footnote omitted.) With respect to the claim that O'Reilly performed deficiently by misadvising the petitioner as to the viability of his self-defense claim, the court found that O'Reilly "did not believe [that] Baxter was necessary or important to the defense of self-defense," and that O'Reilly's assessment in that regard was unreasonable because "Baxter's testimony would have been extremely helpful to corroborate [the petitioner's] testimony and also to establish that [the petitioner] could not retreat with complete safety . . . ." Finally, the court concluded that the petitioner was prejudiced by O'Reilly's deficient performance. The court found that "[t]his is not a case where [the petitioner] changed his plea because he was convinced of the strength of the state's case, or because he believed he would lose at trial or receive a hefty sentence and wanted to cut his losses. The court has no doubt that [the petitioner] intended to go to trial and only changed

---

advised the petitioner not to move to withdraw his plea because he had concerns about the self-defense claim and thought that the petitioner would receive a much longer sentence if convicted after trial.

his mind because . . . O'Reilly told him that Baxter would not testify."

The court went on to reject the petitioner's claim that Pattis rendered ineffective assistance of counsel by failing to file a motion to withdraw the guilty plea. The court found that "[t]he credible testimony establishes that . . . Pattis believed that [the petitioner] was innocent but did not believe that he would get a better result after a trial," and that Pattis "did not seek a motion to withdraw because he was not instructed to do so by [the petitioner]." The court noted that "[t]he calculus facing . . . Pattis was entirely different than that facing . . . O'Reilly" because, "[a]t the time . . . Pattis represented [the petitioner], a plea had already been entered and [the petitioner] was subject to a much shorter sentence than he previously was." The court concluded that, "[u]nder those circumstances, [it could not] conclude that . . . Pattis performed deficiently." The court therefore granted in part the amended petition, vacated the petitioner's convictions, and ordered the case restored to the trial court docket. The respondent subsequently filed a petition for certification to appeal, which the habeas court granted.

On appeal, the respondent concedes that, in light of the habeas court's factual findings and underlying credibility determinations, the court properly concluded that O'Reilly performed deficiently in advising the petitioner that Baxter was not willing to testify. The respondent claims, however, that the habeas court erred in concluding that O'Reilly's inaccurate advice about Baxter's willingness to testify prejudiced the petitioner. The respondent also claims that the court erred in concluding that O'Reilly's advice regarding the viability of a self-defense claim constituted deficient performance. We conclude that the habeas court properly concluded that the petitioner was prejudiced by O'Reilly's incorrect advice regarding Baxter's willingness to testify. Because that conclusion is sufficient to uphold the habeas court's judgment granting the amended petition, we need not

address the respondent's claim that the court erred in concluding that O'Reilly performed deficiently in his advice about the viability of the self-defense claim.

The following legal principles and standard of review are relevant to this appeal. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 703–704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018).

"[T]he governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* [v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and *Hill* [v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. [According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Under . . . *Hill* . . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Emphasis omitted; internal quotation marks omitted.) *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 24, 257 A.3d 399, cert. denied, 340 Conn. 913, 265 A.3d 926 (2021).

Notably, the prejudice analysis under *Hill* is not "reduced to a comparison between the sentence imposed pursuant to a plea bargain with the likely outcome of a

trial." *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 474, 72 A.3d 426 (2013), appeal dismissed, 317 Conn. 594, 119 A.3d 1153 (2015). Although "[t]he prospect of an acquittal, or a more favorable sentence after a trial, is clearly relevant in considering whether counsel's advice with respect to a plea offer would have changed had he not performed deficiently"; id.; "such a prediction is not dispositive in resolving an ineffective assistance claim of this kind." Id., 475. Rather, "the likelihood of an acquittal or a shorter sentence is a factor to be considered in assessing whether an attorney who had found different evidence or considered advancing an affirmative defense would have advised his client to reject a plea offer and go to trial . . . [but] [t]he bottom line issue that must be resolved is whether, but for counsel's allegedly deficient performance, the petitioner would have insisted on a trial." (Citation omitted.) Id., 475–76.

In the present case, the court properly concluded that the petitioner was prejudiced by O'Reilly's incorrect advice regarding Baxter's willingness to testify because it found that, but for that deficient advice, the petitioner "would have continued to reject the [plea] offer and proceeded to trial . . . ." In support of that finding, the court expressly credited the petitioner's testimony "that [he] was insistent on a trial and only changed his mind in the midst of rejecting the offer because he believed that Baxter, who was necessary to his self-defense claim, would no longer be testifying for him." The court further found that "[t]he testimony from [the petitioner] and his father [was] consistent and credible that [the petitioner] intended to reject the offer that day, that . . . O'Reilly told him that Baxter would not testify and that this was surprising to the petitioner and his family." The court found that the petitioner still intended to reject the offer after the meeting with O'Reilly, but that, "in the midst of the plea canvas, he changed his mind and credibly testified that he did so because he believed that, without Baxter, he would be unable to corroborate his defense of self-defense and he was left with no alternative."

The court noted that the petitioner's testimony in this regard was supported by, among other things: Ehring's testimony that the petitioner intended to pursue a self-defense claim and that Baxter "was important to the defense" and " 'would've been persuasive to a jury' "; the petitioner's father, who corroborated the petitioner's testimony that he intended to reject the plea and go to trial and that he changed his plea just minutes after O'Reilly told him that Baxter was no longer willing to testify; and Pattis' testimony that he and the petitioner discussed Baxter's availability as a witness between the plea and sentencing. The court found that "[t]his is not a case where [the petitioner] changed his plea because he was convinced of the strength of the state's case, or because he believed he would lose at trial or receive a hefty sentence and wanted to cut his losses." The court stated that it "ha[d] no doubt that [the petitioner] intended to go to trial and only changed his mind because . . . O'Reilly told him that Baxter would not testify."

The respondent does not challenge any of the court's factual findings or claim that the court applied the wrong legal standard. Rather, the respondent claims that, as a matter of law, the court erred in concluding that the petitioner was prejudiced by O'Reilly's deficient performance because the petitioner did not move to withdraw his guilty plea after retaining Pattis. The respondent contends that "the petitioner necessarily failed to demonstrate that, had he received fully competent advice, he would have rejected the plea offer and insisted on going to trial because, when he had the opportunity to pursue that avenue before sentencing, he eschewed such an effort."[5]

The respondent does not cite any authority that supports the proposition that a petitioner who retains a new

---

[5]The respondent's argument that the petitioner necessarily could not prevail on his claim because he did not avail himself of the opportunity to withdraw his plea prior to sentencing is akin to a waiver or procedural default defense. Specifically, the respondent does not claim that the court made clearly erroneous factual findings or applied the wrong legal standard but, rather, that the petitioner's failure to assert his

attorney after entering his guilty plea but does not move to withdraw the plea prior to sentencing is precluded from establishing in a subsequent habeas proceeding that he was prejudiced by his counsel's deficient advice.[6] The prejudice inquiry in the present case ultimately came down to the factual question of whether the petitioner would have pleaded guilty if not for O'Reilly's inaccurate advice regarding Baxter's willingness to testify. See *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 356–57, 273 A.3d 680 (2022) (although "question of

claim earlier precluded him from prevailing before the habeas court. See, e.g., *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 17, 272 A.3d 169 (2022) (noting that procedural default is forfeiture rule that applies when petitioner "fail[s] to make the timely assertion of a right" (internal quotation marks omitted)); *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 143, 81 A.3d 1209 (2013) ("[w]aiver is the intentional relinquishment or abandonment of a known right" (internal quotation marks omitted)). The respondent, however, did not raise either defense before the habeas court. Thus, we have no occasion to consider whether procedural default or waiver may apply under the current circumstances, namely, when a petitioner is aware of the factual basis for a claim that his counsel rendered ineffective assistance in connection with his guilty plea and was represented by a different attorney at sentencing. See, e.g., *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 734, 779 A.2d 156 (2001) (procedural default is affirmative defense that must be alleged by respondent in return).

[6]Contrary to the respondent's contention, *Cruz* v. *Commissioner of Correction*, supra, 206 Conn. App. 17, does not support his argument. In *Cruz*, the habeas court found that the petitioner in that case was not credible in testifying that he would not have pleaded guilty but for his counsel's advice. Id., 23–24. In support of that finding, the court relied in part on the fact that the petitioner had filed a motion to withdraw his plea but did not pursue that motion on the advice of replacement counsel who was appointed to represent him at sentencing. Id., 23. Although the court in *Cruz* may have determined, after considering the evidence presented in that case, that the petitioner's failure to pursue his motion to withdraw undermined his credibility regarding the effect that his counsel's advice had on his decision to plead guilty, the court in the present case found otherwise. Nothing in *Cruz* suggests that we intended that decision to preclude a habeas court from exercising its customary role to evaluate the credibility of witnesses. On the contrary, *Cruz* reiterated the well established principle that the habeas court "is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony . . . [and] [t]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) Id., 24–25.

whether a habeas petitioner's sixth amendment rights have been violated is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case . . . the specific underlying question of whether there was a reasonable probability that a habeas petitioner would have accepted a plea offer but for the deficient performance of counsel is one of fact, which will not be disturbed on appeal unless clearly erroneous" (citations omitted; internal quotation marks omitted)); see also *Cullen* v. *United States*, 194 F.3d 401, 405 (2d Cir. 1999) ("the determination of the likelihood that [the petitioner] would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one"). The resolution of that issue required the court to weigh the competing evidence and decide which testimony it deemed credible. After hearing the testimony and weighing the evidence, the court credited the petitioner's testimony that he would have gone to trial if he had known that Baxter was willing to testify, and it is not our role as an appellate court to second guess that determination. See *Barlow* v. *Commissioner of Correction*, supra, 367–68 ("[t]o the extent that the contemporaneous evidence was equivocal . . . it was up to the habeas court, as the finder of fact, to weigh the equivocal contemporaneous evidence in assessing whether to believe all, none, or some of the petitioner's testimony . . . [and] we will not second-guess the habeas court's credibility determination" (citations omitted; internal quotation marks omitted)). Accordingly, we conclude that the court did not err in concluding that the petitioner was prejudiced by O'Reilly's incorrect advice regarding Baxter's willingness to testify.

The judgment is affirmed.